UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JEFFREY W. MOSELEY,

Petitioner,

vs.                                        Case No.  5:09-cv-378-Oc-29PRL

SECRETARY DEPARTMENT OF
CORRECTIONS;  FLORIDA ATTORNEY
GENERAL,

Respondents.

_____

## OPINION AND ORDER

### I. Status

Jeffrey Moseley (hereinafter "Petitioner" or "Defendant") initiated this action

by filing a *pro se* Petition for Writ of Habeas Corpus ("Petition," Doc. #1) pursuant to

28 U.S.C. § 2254 on August 25, 2009.[1]  Petitioner attaches voluminous exhibits to

his Petition consisting of portions of the trial transcript and post-conviction motions.[2]

---

[1] The Petition (Doc. #1) was docketed and filed with the Court  on August 28, 2009; however, the Court applies the "mailbox rule" and deems the Petition "filed on the date it was delivered to prison authorities for mailing." Alexander v. Sec'y Dep't of Corr., 523 F.3d 1291, 1294 n.4 (11th Cir. 2008).

[2] Pursuant to the Rules Governing Section 2254 Cases, after the Court reviews a petition and directs the Respondent's to answer, Respondent's answer must include the state court transcripts.  See Rule 5 (c)-(d).  Here, Petitioner attaches approximately 130 pages of the state court transcripts, which are duplicative of the exhibits filed by Respondent.  See docket.  Further, Petitioner filed these exhibits, but did not file a motion to expand the record.  See generally Rule 7.  In the event Petitioner had filed a motion to expand the record, the opposing party must have an opportunity to admit or deny the correctness of the materials.  Id. at Rule 7(c).  Because the exhibits are duplicative and were not properly filed, the Court will direct the Clerk of Court to strike the exhibits docketed

(continued...)

By Amended Information dated February 20, 2006,[3] Petitioner was charged with the following three counts: Count 1- unlawful sexual activity with minor KB[4]; Count 2- lewd or lascivious battery upon SF; and, Count 3- interfering with child custody.  See Exh. XXVI; see also Response at 2.  The jury found Petitioner not guilty as to count 1, but guilty as charged in counts 2 and 3.  Id.  Petitioner was sentenced to fifteen-years of imprisonment as to count 2 and five-years on count 3. Response at 2 (citing Exhs. Appx. 1 at 163-64, 203-11, 239-44; Appx. 2). Petitioner's sentence and conviction were *per curiam* affirmed on direct appeal on October 10, 2006.  Response at 2; Moseley v. State, 939 So.2d 1077 (Fla. 5th DCA 2006).

The Petition *sub judice* identifies the following twelve grounds for relief, each alleging ineffective assistance of trial counsel (as stated by Petitioner):

**Ground 1**: Counsel failed to object to the State prosecuting an uncharged offense;

**Ground 2:**  Counsel failed to call or interview exculpatory witnesses on defense witness list;

---

[2](...continued)
at Doc. #1-1.

[3]The Amended Information consolidated three different criminal cases against Petitioner (case no. 03-4170-CF-A-W, case no. 04-1603-CF-A-W, and case no. 04-3219-CF-A-W).  For a thorough procedural history of the charges in this case refer to the post-conviction court's order denying Petitioner relief without a hearing.  See Exh. XXVI.

[4]The Court will refer to the victims' by their initials, in lieu of their names to protect their identity.

**Ground 3:**  Inadmissible evidence- Counsel failed to file a pre-trial motion to suppress an unauthenticated confession letter;

**Ground 4:** Inadmissible evidence-Counsel failed to file adequate motion to suppress tattoo with available witnesses;

**Ground 5:**  Failed to use exculpatory 911 record;

**Ground 6:**  Counsel failed to acquire and use Petitioner's cell phone records;

**Ground 7:**   Counsel knowingly elicited harmful and damaging testimony;

**Ground 8:**  Counsel failed to object to <u>Williams</u> Rule 90.404, and failed as well to object to state requirements under 90.404(2)(C)(1);

**Ground 9:**  Counsel was deficient and ineffective as counsel's direct confession of guilt;

**Ground 10:**  Counsel failed to object or request a mistrial to improper comments made by the prosecutor;

**Ground 11:**  Counsel provide[d] ineffective assistance when counsel failed to object to trial court vindictively sentencing Petitioner to the maximum term allowed, as threatened in the trial courts initiated plea bargaining session;

**Ground 12:**  Counsel was ineffective for failing to motion the Court with a proper and adequate judgment of acquittal.

Petition at 16; Response at 6.

Respondent filed a Response to the Petition (Doc. #7, Response), and

attached exhibits in support (Exhs. I-LV).  Respondent concedes that the Petition is

timely filed pursuant to 28 U.S.C. § 2244(d),[5] but submits that the Petition should be denied based on Petitioner's procedural defaults of Grounds 12 and 13; and, Petitioner's failure to satisfy his burden under 28 U.S.C. § 2254(d), (e) as to the remaining grounds.  See generally  Response.  Petitioner filed a Reply (Doc. #12, Reply).  This matter is ripe for review.

## II.  Applicable § 2254 Law

### A.  Only Federal Questions Cognizable

A federal court only may entertain an application for a writ of habeas corpus from a state prisoner who claims his custody violates the "Constitution or the laws or treaties of the United States."[6]  "The writ of habeas corpus was not enacted to enforce State-created rights."[7]  In particular, "[a] state's interpretation of its own laws

---

[5]Respondent states that if Petitioner is entitled to an additional 90 days after mandate issued on direct appeal during which he could have, but did not seek, *certiorari* review in the United States Supreme Court, then the Petition is timely filed by "some 80 days."  Response at 5.  Petitioner is entitled to the additional 90 days.   See 28 U.S.C. § 2244(d)(1)(A); Rule 13.3 of the United States Supreme Court.  A conviction is deemed final upon "the conclusion of direct review or the expiration of the time for seeking such review." 20 U.S.C. § 2244(d)(1)(A).  For purposes of direct review, United States Supreme Court Rule 13.3 states, in pertinent part, that "[t]he time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate[.]"; see generally McMillan v. Sec'y Dept. of Corr., 257 F. App'x 249, 250 (11th Cir. 2007)(citing Bond v. Moore, 309 F.3d 770, 773-74 (11th Cir. 2002)(finding conviction became final upon issuance of order affirming the conviction and sentence on direct appeal); Nyland v. Moore, 216 F.3d 1264, 1267 (11th Cir. 2000)(explaining that in Florida, an appellate court's order denying rehearing on its affirmance of the state trial court's denial of a motion for post-conviction relief is pending until the mandate issues).

[6]28 U.S.C. § 2254(a).

[7]Cabberiza v. Moore, 217 F.3d 1329, 1333 (11th Cir. 2000)(citation and quotation
(continued...)

or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."[8]  "Federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation of a state law absent a constitutional violation."  Consequently, "a challenge to a state collateral proceeding does not undermine the legality of the detention or imprisonment - i.e., the conviction itself - and thus habeas relief is not an appropriate remedy."[9]  Similarly, a claim that petitioner's federal rights have been violated because state officials failed to correctly apply state law is merely a state law claim "couched in terms" of a federal claim, and fails to state a claim upon which relief may be granted by habeas corpus.[10]

### B.  Exhaustion and Procedural Default

A federal court may only review an issue under § 2254 if petitioner first afforded the state courts an adequate opportunity to address that issue.[11]

> Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.  To provide the State with the necessary opportunity, the prisoner must fairly present his claim in each

---

[7](...continued)
marks omitted); Estelle v. McGuire, 502 U.S. 62, 68 (1991); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).

[8]  McCullough v. Singletary, 967 F.2d 530, 535 (11th Cir. 1992).

[9]Alston v. Dep't of Corr., 610 F.3d 1318, 1325-26 (11th Cir. 2010)(internal quotation and citation omitted).

[10]Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1989).

[11] 28 U.S.C. § 2254(b)(1)(A).

appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim.

Baldwin v. Reese, 541 U.S. 27, 29 (2004)(internal citations and quotations omitted). This imposes a "total exhaustion" requirement in which all the federal issues must have first been presented to the state courts.[12] "In other words, the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."[13] Additionally, in articulating a factual basis in support of a claim for relief, a petitioner must have also alleged the factual predicate to the state court.[14]

"A claim is procedurally defaulted if it has not been exhausted in state court and would now be barred under state procedural rules."[15] Under the procedural default doctrine, "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas

---

[12]Rhines v. Weber, 544 U.S. 269, 274 (2005).

[13]O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  See also Henderson v. Campbell, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.")(quoting Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)); Duncan v. Henry, 513 U.S. 364, 365 (1995)(stating "exhaustion of state remedies requires that petitioners 'fairly present federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights'").

[14]Kelley v. Sec'y for Dep't of Corrs., 377 F.3d 1317, 1343–44 (11th Cir. 2004)(noting that petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petition if they did not first raise them in the state courts).

[15]Mize v. Hall, 532 F.3d 1184, 1190 (11th Cir. 2008).

relief, . . . . ."[16]  A procedural default for failing to exhaust state court remedies will only be excused in two narrow circumstances.  First, a petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the asserted error.[17]  Second, under exceptional circumstances, a petitioner may obtain federal habeas review of a procedurally defaulted claim, even without a showing of cause and prejudice, if such review is necessary to correct a fundamental miscarriage of justice.[18]

### C.  Deferential Review Required By AEDPA

Petitioner filed his timely Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996).  Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007);  Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under the deferential review standard, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

---

[16]Smith v. Jones, 256 F.3d 1135, 1138 (11th Cir. 2001).

[17] House v. Bell, 547 U.S. 518, 536-37 (2006); Mize v. Hall, 532 F.3d at 1190.

[18]House v. Bell, 547 U.S. 518, 536 (2006); Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).[19]  "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands that the state-court decisions be given the benefit of the doubt."[20]

Both the Eleventh Circuit and the Supreme Court broadly interpret what is meant by an "adjudication on the merits."[21]  Thus,  a state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits that warrants deference by a federal court.[22]   Indeed, "unless the state court clearly states that its decision was based solely on a state procedural rule [the Court] will presume that the state court has rendered an adjudication on the merits when the petitioner's claim 'is the same claim rejected' by the court."[23]

"A legal principle is 'clearly established' within the meaning of this provision only when it is embodied in a holding of [the United States Supreme] Court."[24]  "A

_____

[19]Cullen v. Pinholster, ___ U.S. ___, 131 S. Ct. 1388, 1398 (2011).

[20]Id. (internal quotations and citations omitted).  See also Harrington v. Richter, ___ U.S. ___, 131 S. Ct. 770, 786 (2011) (pointing out that "if [§ 2254(d)'s] standard is difficult to meet, that is because it was meant to be.").

[21]Childers v. Floyd, 642 F.3d 953, 967-68 (11th Cir. 2011).

[22]Id.; see also Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008).

[23]Childers v. Floyd, 642 F.3d at 969 (quoting Early v. Packer, 537 U.S. 3, 8 (2002)).

[24]Thaler v. Haynes, ___ U.S. ___, 130 S. Ct. 1171, 1173 (2010); see also Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412

(continued...)

-8-

state court decision involves an unreasonable application of federal law when it identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case, or when it unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."[25]  The "unreasonable application" inquiry requires the Court to conduct the two-step analysis set forth in <u>Harrington v. Richter</u>, 131 S. Ct. 770.[26]   First, the Court determines what arguments or theories support the state court decision; and second, the Court must determine whether "fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior" Supreme Court decision.[27]  Whether a court errs in determining facts "is even more deferential than under a clearly erroneous standard of review."[28] The Court presumes the findings of fact to be correct, and petitioner bears the burden of rebutting the presumption by clear and convincing evidence.[29]

---

[24](...continued)
(2000))(recognizing "[c]learly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision).

[25]<u>Ponticelli v. Sec'y, Fla. Dep't of Corr.</u>, ___ F.3d ___, 2012 WL 3517146 *19 (internal quotations and citations omitted).

[26]<u>Id.</u>

[27]<u>Id.</u> (citations omitted).

[28]<u>Stephens v. Hall</u>, 407 F.3d 1195, 1201 (11th Cir. 2005).

[29]28 U.S.C. § 2254(e)(1).

The Supreme Court has held that review "is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen, 131 S. Ct. at 1398.  Thus, the Court is limited to reviewing only the record that was before the state court at the time it rendered its order.[30]

### D.  Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).[31]   Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.[32]   In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors

---

[30] Id.

[31] Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).

[32] Newland, 527 F.3d at 1184.

were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."[33]   Petitioner bears a heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable."[34]  A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny.  Id.  A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."[35] An attorney is not ineffective for failing to raise or preserve a meritless issue.[36]  "To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable.  But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'"[37]

---

[33]Strickland, 466 U.S. at 688.

[34]Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006), cert. denied sub nom. Jones v. Allen, 127 S. Ct. 619 (2006).

[35]Strickland, 466 U.S. at 689.

[36]Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (stating "a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client").

[37]Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting Burger v. Kemp, 483 U.S. 776, 794 (1987)).

## III.  Findings of Fact and Conclusions of Law

This Court has reviewed the record and concludes that no evidentiary proceedings are required in this Court.[38]  Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court.  <u>Schriro</u>, 127 S. Ct. at 1940; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).

### Ground One

Petitioner argues that defense counsel failed to object to the State prosecuting an "uncharged offense."  Petition at 19.  Petitioner argues that the post-conviction court's order denying him relief on this claim was "unreasonable" and "misapplied." <u>Id.</u> at 19.  Petitioner submits that the prosecution charged one offense in the information, but then prosecuted the elements of a separate offense.  <u>Id.</u> at 19-20. Petitioner faults trial counsel for failing to prepare and investigate the charges he was facing, as well as the charging information filed by the State.  <u>Id.</u> at 20. Accordingly, Petitioner argues that his counsel "allowed him to be convicted of an offense he was not charged with in the information/indictment."  <u>Id.</u>

In Response, Respondent points to the appellate court's order affirming the Rule 3.850 court's order denying Petitioner relief on ground one.  Response at 10-11.  Respondent notes that the appellate court found Petitioner suffered no actual

---

[38]<u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007).

prejudice from any "technical defect" in the charging document since he was neither the victim's parent nor her legal guardian and had not defended on that basis. Id. (citing Exh. XXXI).   Nevertheless, Respondent argues that this ground for relief involves a state court interpretation of state substantive law, not subject to federal habeas corpus review.   Id.

The record shows the post-conviction court denied Petitioner relief on Ground One.  Exh. XXVI.  The court recognized and applied the Strickland standard.  Id.  In pertinent part, the court found:

> The issue raised by this Defendant again pertains to Court III of the Amended Information.  In Count III, the State alleged that the Defendant, between May 30, 2004 and August 16, 2004, in Marion County, Florida, in the absence of a court order determining rights of custody or visitation, obtained custody of [SF], a child under the age of 17 years, by unlawfully taking, detaining, concealing or enticing away the child with malicious intent to deprive Penny Anders of her right to custody of the child.

> At best this Court can determine, the Defendant is complaining about what subparagraph of § 787.03, Fla. Stat., is applicable.  Clearly, for the reasons discussed in the previous section, the evidence at trial supported the State's prima facie case that [SF] was under the age of 17 years and that the Defendant, without lawful authority, took, enticed, aided, abetted, hired or otherwise procured to take or entice [SF] from the custody of her legal guardian.  The Amended Information reflects that Defendant, Moseley, did not have a court order that granted him custody or visitation of this child and he unlawfully took, detained, concealed or enticed this child, with malicious intent, to deprive Penny Anders of her right to custody.  The Defendant argues some type of "fundamental error" issue about allegedly being convicted of something for which was not charged.  As there was evidence before the jury that supported the conviction on Count III (T, 207, 227, 228-291), the Court finds the Defendant fails to establish both prongs under Strickland.  Clearly, if this Defendant's position is accurate, i.e. fundamental error exists that an alleged improper conviction occurred under an incorrect

statute, the appellate court would have rectified such an error on direct appeal and/or addressed the same in what turned out to be Defendant's unsuccessful petition in which he claimed ineffective assistance of appellate counsel.   The Court again notes that the Defendant's appellate counsel filed an <u>Anders</u> brief, the direct appeal was <u>per</u> <u>curiam</u> affirmed and his petition claiming ineffective assistance of appellate counsel was denied.

Exh. XXVI.  As Respondent correctly points out, the appellate court affirmed the

post-conviction court's order and wrote separately to address Ground One.  Exh.

XXXIV.  The appellate court ruled as follows:

On September 22, 2003, K.B., a minor student at Belleview High School in Marion County, Florida, reported to her school counselor that she had engaged in sex with Moseley.  She also reported that her fourteen-year-old cousin, S.F., was involved in a sexual relationship with Moseley at the time.  Moseley was forty-two years old.  A report was made to law enforcement, which led to Moseley's arrest on a single charge of unlawful sexual activity with K.B.  Moseley made bail shortly after his arrest on this charge, after which he continued his relationship with S.F, while living in the home with S.F. and her mother.

On April 19, 2004, the Department of Children and Families removed S.F. from her mother's custody, after the mother admitted to police that she was aware of the sexual affair between her daughter and Moseley, and had still allowed Moseley to stay in her home.  The Department placed S.F. with an aunt [Aunt Penny], and Moseley was arrested for the sexual battery of S.F.  He again made bail, and again continued his relationship with S.F., taking her from her aunt's custody and absconding to Las Vegas, Nevada, and then back to Florida, where he was eventually apprehended (with S.F.) at his sister's home in Dania Beach.  The State then amended its information, adding a charge of interfering with child custody in violation of section 787.03, Fla. Statutes (2003).

That statute contains two relevant subsections.  In pertinent part, section 787.03(1) makes it unlawful for *any person* to take a child from the custody of his or her parents or lawful custodian, absent lawful authority to do so.  Section 787.03(2), in relevant part, makes it unlawful for *any*

*parent or lawful custodian of a child*, to take the child with malicious intent to deprive another parent or lawful custodian of that person's legal right to custody of their child.  Moseley is unrelated to S.F., and was clearly not her legal custodian.  Therefore, subsection (2) had no application to this case.  However, Moseley clearly violated subjection (1) by taking S.F. from her aunt, who had lawful custody of S.F. at the time.

Inexplicably, the State's amended information in the case charged Moseley with violation subsection (2), and no one appears to have caught the error.  Instead, all parties and the court simply assumed that Moseley was being prosecuted under subjection (1).  Moseley never objected to the defect in the information, and the information was never amended.  The jury was instructed on the elements of the crime outlined in subsection (1), and Moseley was convicted of that charge.  In essence, Moseley was charged with violating 787.03(2), but was convicted of violating section 787.03(1).  Citing to the general rule that due process is violated when an individual is convicted of an uncharged crime, Moseley claims that he is entitled to postconviction relief.

. . . . . "[T]echnical difficulties in a charging instruction are waived if the defendant does not raise them before the state rests its case."  Id. (citing McMillan v. State, 832 So. 2d 946, 948 (Fla. 5th DCA 2002)).  With respect to *untimely* challenges to technical deficiencies in the information or indictment, Florida courts have consistently held that a defendant is not entitled to relief: "(1) where a statutory citation for the crime is given, but all elements are not properly charged, or (2) where the wrong or no statutory citation is given, but all elements of the crime are properly charged."  Id. (quoting State v. Burnette, 881 So.2d 693, 695 (Fla. 1st DCA 2004) and also citing Cuevas v. State, 770 So. 2d 703, 705 (Fla. 4th DCA 2000)).

In this case, although the information alleged the wrong subsection, it also alleged that Moseley did "unlawfully take, detain, conceal or entice away" S.F. "a child 17 years of age or under" from her aunt with the "intent to deprive [the aunt] of a right to custody of said child . . . ."  Although the language of the information does not track subjection (1) perfectly, it does allege all essential elements of the crime for which Moseley was convicted, and therefore withstands Moseley's untimely challenge.  Id.  Ultimately, the "the test for granting

relief based on a defect in the charging document is actual prejudice to the fairness of the trial." Id. (quoting State v. Gray, 435 So. 2d 816, 818 (Fla. 1983)). In this case, it is clear that Moseley suffered no actual prejudice.   Rather, he defended the case at all stages of the proceeding, through verdict and appeal **under the assumption that he had been charged pursuant to subsection (1)** of the statute, since he was not the parent or lawful guardian of the child.   It would be contrary to the ultimate aim of justice to allow Moseley to now escape the consequences of his crime by belatedly objecting to a technical defense in the information that could have easily been corrected if the objection had been timely raised.

Exh. XXXIV (emphasis added).

Here, Petitioner faults defense counsel for not objecting to the typographical error in the amended information in count 3, which cited subsection (2) of the Florida Statute when it should have referenced subsection (1), 787.03, Fla. Stat. See Petition at; see also Reply at 12-19.   The Court finds that the State courts' determinations that counsel's failure to object to this error did not amount to ineffective assistance of counsel, is not contrary to, nor an unreasonable application of, clearly established federal law.   Nor is it an unreasonable determination of the facts in light of the evidence presented.   The State courts applied the proper legal standard, ie. the Strickland standard.   Not only did defense counsel overlook the typographical error, but the court, the prosecutor, and appellate counsel overlooked this error.   Moreover, the State courts' determination that Petitioner was not prejudiced   was reasonable.   The State court determined that the words of the amended information charged the necessary elements and therefore complied with

State law by properly charging a violation of Fla. Stat. § 737.03(1).[39]  Review of this finding of State law is not cognizable in a federal habeas proceeding.  <u>Engle v. Isaac</u>, 456 U.S. 107, 119-20 (1982); <u>Davis v. Jones</u>, 506 F.3d 1325, 1332 (11th Cir. 2007)("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved." <u>Davis</u>, 506 F.3d at 1332 (quoting <u>Carrizales v. Wainwright</u>, 699 F.2d 1053, 1055 (11th Cir. 1983)).   Additionally, as set forth above, the record contains facts supporting Petitioner's conviction of count 3.

Moreover, a challenge to the amended information itself is procedurally barred because Petitioner did not raise this issue during trial, or on direct appeal, as correctly noted by the State courts.   And, Petitioner's ineffective assistance of counsel claim does not overcome this procedural bar, nor does he demonstrate a fundamental miscarriage of justice.   Accordingly, Petitioner is denied relief on Ground One.

### Grounds Two, Three, and Four

The Court will address Grounds Two, Three, and Four together because they all involve ineffective assistance of counsel claims stemming from counsel's failure to introduce alleged exculpatory evidence and/or file motions to suppress.  <u>See</u>

---

[39]Even if Petitioner's jury trial was in federal court, Federal Rule of Criminal Procedure 7(c)(2) states "[u]nless the Defendant was misled and thereby prejudiced, neither an error in a citation nor a citation omission is grounds to dismiss the indictment or information or to reverse a conviction."

generally Petition at 30-46.  In Ground Two,  Petitioner argues that defense counsel

rendered ineffective assistance by failing to call or interview exculpatory witnesses

on defense witness list: Christopher Smith, Sara Fisher, Christopher Moseley, and

Bonnie Grundy, who Petitioner identifies as his ex-wife. Id. at 33.  Petitioner claims

that these defense witnesses would have testified at the suppression hearing that

Petitioner's tattoo of the name "Samantha" was done 10 years before he met victim

SF and was not representative of the victim's name, but instead his daughter's

name. Id. at 33-34.  Petitioner names additional witnesses who counsel should have

called: Colt Jason Moseley and Chris Harroll, who he says would have testified that

they saw SF's mother walking quickly away from Petitioner's vehicle shortly before

Petitioner found the "confession letter" in his vehicle.  Id. at 34.   Additionally,

Petitioner points to witness Christopher Smith, claiming that Smith would have

impeached victim SF's testimony because he overheard phone calls from SF to

Petitioner "requesting help from her families [sic] abuse . . . and . . . threat[s] to run

away from her Aunts [sic] home." Id. at 35-36.  Petitioner states that he submitted

affidavits from these witnesses to the post-conviction court.[40]

In Ground Three, Petitioner faults defense counsel for: (a) not filing a pre-trial

motion to suppress the "'un-authenticated' confession letter"; and, (b) failing to object

---

[40]The Court notes that there were neither any affidavits from these witnesses
attached to Petitioner's Rule 3.850 Motion, nor in the exhibits Petitioner attached to his
Petition.   See Exh. XXIV.   Attached to Petitioner's Reply, are letters written from
Christopher Smith, Bonnie Grundy, Chris Moseley, Colton Moseley, all pertaining to the
"Samantha" tattoo.  Reply at 56-59.

or move for a mistrial when the prosecutor alleged that the letter contained Petitioner's actual words in violation of the hearsay rules.[41]   Petition at 36-43. Petitioner again points to the proposed testimony from eyewitnesses who would have testified they saw SF's mother leave the note in Petitioner's car.  Id. at 40-41.

In Ground Four, Petitioner claims defense counsel rendered ineffective assistance of counsel by failing to move to suppress a photograph of Petitioner's tattoo of the name "Samantha."  Petition at 43.  Petitioner faults defense counsel's strategy of explaining that Petitioner got the tattoo in a "fatherly way for the alleged victim."  Id. at 44.

In Response, Respondent points to the record noting that defense counsel did not call these witnesses because he did not think the witnesses had any relevant information.  Response at 11.  With respect to Petitioner's tattoo, defense counsel objected to the introduction of the photograph of the tattoo, but not on the basis that Petitioner had the tattoo ten years before knowing SF.   Response at 12. Respondent points out that the post-conviction court denied Petitioner relief on this claim because the tattoo evidence was not a prominent part of the trial.  Response at 12.  Respondent also notes that the record shows that defense counsel objected

---

[41]In his Rule 3.850 Motion, Petitioner did not raise a claim that counsel rendered ineffective assistance for failing to object or move for a mistrial when the prosecutor said "the letter contained Petitioner's words."  See Exh. XXXIV.  Thus, to the extent Petitioner raises this issue sub judice, the issue is unexhausted and procedurally defaulted. Petitioner has not shown any exceptions to justify overcoming this procedural default.

to the authentication of the "confession letter," but the trial judge found that the chain of custody had been clearly established.  Response at 11.

The post-conviction court denied Petitioner relief on these claims as follows:

> In what appears to be Ground 5 of Defendant's motion, he contends that his counsel was constitutionally ineffective for allowing what Defendant refers to as a "confession letter" to be admitted into evidence, a copy being attached, and for allowing evidence to go to the jury that the Defendant had a tattoo on his arm with the name of "Samantha" (the victim's first name was Samantha) when this tattoo preexisted this incident by almost 10 years. For purposes of this motion, the Court reprints the content (including misspellings and grammatical errors) of the letter in question which was admitted into evidence as State's Exhibit #3:

> > I, Jeffrey Wayne Moseley, do confess of my own free will and have not been made to make this statement. As of June 18, 2003, I began a relaytionship [sic] with [SF] 15 years old, I informed her mother Stacy Bentley one week later, we talked about the relationship and began a trust she gave her permision [sic] and was happy to have myseelf [sic] and her 15 year old daughter together. As we talked she agreeed [sic] to sign papers that Samantha's 16th birthday for us to be married [sic], the relaytionship [sic] was not sexual in nature until September 15, 2003 at witch [sic] time I was living in Stacy Bentley's home and she was informed that we would be moving forward and starting a sexual relaytionship [sic] together, and this approved by Mrs. Bentley. During whole 12 month relaytionship [sic] I lived with and had complete support from Mrs. Bentley, Mrs. Bentley started a relaytionship [sic] with Mr. Roy Fairless, Jr. around 12/10/2003, he was brought into the family and told of Samantha and my relaytionship [sic] as he moved in with Mrs. Bentley he allso [sic] approved of our relaytionship [sic], to the point that when Mrs. Bentley and Mr. Fairless moved into Mr. Fairless's parents home 169 Juniper Loop, he created a room in the converted garage for Samantha and myself to move into. Mr. Fairless and Mrs. Bentley permited [sic] us to shower together and sleep as marryed [sic] partners.

And now they are trying to hole this information over our heads for there own gain, and to controll [sic] us with threats. As is why I am confessing to this act, to know longer have there threats and control of my life and Samantha' s.

<u>I do swear that all accounts are true and factual.</u>

Defense counsel objected to the admissibility of this letter because it was not signed, was not handwritten and should not be introduced as an admission (T, 297-298). The Court overruled the objection (T, 305). The testimony of Detective Raymond Dwyer, during the State's case in chief, established that he spoke with [SF] and her mother (Bentley) at the Belleview Police Department in April, 2004 having received a report that Samantha was having a sexual affair with this Defendant (T, 293).   Detective Dwyer became aware that the Defendant and Samantha's mother had a meeting planned and he waited in an unmarked vehicle at a Kwik King parking lot for this meeting.   He testified that he saw the Defendant hand this specific letter to Ms. Bentley and that the detective then got the letter from her (T, 294-296), confirming chain of custody.

For purposes of this Rule 3.850 motion, defense counsel was not ineffective.   Counsel objected to the admissibility of this document which the Court overruled (T, 297-298,305). Counsel preserved any alleged error for appellate review. The purpose of a motion for post-conviction relief is not to review alleged ordinary trial errors that are reviewable by means of direct appeal. <u>State v. Johnson</u>, 651 So.2d 145 (Fla. 2d DCA 1995). After the <u>Anders</u> brief was filed by the Defendant's appellate counsel, the Defendant filed his own <u>pro</u> <u>se</u> brief on appeal. The Attorney General's Office filed no answer brief to the <u>pro</u> <u>se</u> Defendant's initial brief. Clearly, the alleged incorrect ruling by this Court in admitting this letter into evidence was a claim that either was raised or could have been raised by the Defendant on direct appeal and is not the proper subject for a Rule 3.850 motion. <u>Peede v. State</u>, 748 So.2d 253 (Fla. 1999).   Defendant also asserts that his counsel was ineffective for failing to call Colt Moseley  (Defendant's son) or Chris Harrell to testify, at trial, about the Defendant not having previously seen the letter. Assuming this is true, it provides no relief to the Defendant under <u>Strickland</u>. Assuming this seeming hearsay is admissible, it does not change the fact that, on the date the Defendant met with Samantha's mother, the purpose of the meeting was the

Defendant obtaining the mother's signed consent both confirming and approving the Defendant, as an over 40-year old man, having a continuing sexual relationship with a 15-year old girl (Samantha) or that Detective Dwyer observed the Defendant personally hand this damaging "confession" letter to Samantha's mother (T, 293-297). The result of the trial is reliable.

Defendant contends his defense counsel was constitutionally ineffective because counsel did not present evidence/witnesses to verify the preexistence of the Defendant's "Samantha" tattoo. Specifically, the State of Florida presented evidence, by photograph, that the Defendant had a tattoo of Samantha's name with a rose (T, 233) leaving the express or implied suggestion to the jury that Defendant obtained this tattoo as a demonstration of his feelings toward this victim.   Defense counsel did in fact object to the admissibility of this photograph (T, 132-135). This Court overruled the objection (T, 140), although the objection was based on grounds other than the tattoo preexisted Defendant's relationship with Samantha .

Strickland teaches that in assessing the prejudice resulting from counsel's alleged errors, a court hearing an ineffectiveness claim must consider the same in light of the totality of the evidence that was before the judge or jury.  See also Tyson v. State, 905 So.2d 1048, 1049 (Fla. 2d DCA 2005). The test is not whether this Court believes the evidence from the Defendant's witnesses that would be presented at a post-conviction hearing regarding this tattoo. Id. For purposes of this order, the Court will assume that a reasonable jury would have believed the Defendant's proffered testimony from sufficient non-cumulative witnesses that the Defendant's "Samantha" tattoo preexisted his relationship with the minor victim, [SF].

The Strickland issue then is whether, within a reasonable probability, had the jury heard non-cumulative testimony from the various witnesses listed in the Defendant's motion that his tattoo preexisted his relationship with [SF] and had nothing to do with any showing of affection toward this minor, this would have changed the outcome of his trial. The Court finds that the Defendant fails to meet his evidentiary burden under Strickland. The totality of the evidence the jury heard included the contents of the above letter and how Defendant presented it to Ms. Bentley for purposes of her signature/approval. The jury also heard evidence that this minor child disappeared from her Aunt Penny in May, 2004 and was found in the Defendant's custody

some 2 1/2 months later in Broward County, Florida (T, 228-231) in the Defendant's sister's house while the Defendant was clearly trying to hide his location/appearance from the then arresting deputy sheriff in Broward County, Florida (T, 313-317). Third, this tattoo was not a prominent factor in the trial. The prosecutor's closing argument includes approximately eight lines of the discussion of the tattoo (T, 425) and no discussion of the same in his rebuttal closing argument.

Exh. XXVI at 15-19. The appellate court affirmed the post-conviction court's order denying Petitioner relief. Exh. XXXIV.

The Court finds that the State courts' determinations that counsel's failure to call Petitioner's identified witnesses did not amount to ineffective assistance of counsel, is not contrary to, nor an unreasonable application of, clearly established federal law. Nor is the State court's factual determination unreasonable based on the evidence presented. As set forth above, the State court properly applied the Strickland standard. Thus, for Petitioner to establish he is entitled to relief on these claims, Petitioner must establish that the post-conviction court incorrectly applied the Strickland standard in reaching its determination that the claim lacks merit.[42]

In Florida courts, "failure of counsel to call witnesses on behalf of the defense is a matter of personal judgment exercised by defense counsel and is not a ground of collateral attack."[43] Likewise, in federal court, "complaints of uncalled witnesses

---

[42]See  Parker v. Sec'y for Dep't of Corr., 331 F.3d 764, 766 (11th Cir. 2003), cert. denied, 540 U.S. 1222 (2004).

[43]Daniels v. McDonough, 2006 WL 2620143 (M.D. Fla. Sept. 13, 2006)(citing Fuller v. Wainwright, 238 So. 2d 65, 66 (1970)).

are not favored[ ] because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative."[44]  Moreover, "evidence about the testimony of a putative witness must generally be presented in the form of actual testimony by the witness or an affidavit. "A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim."[45] Consequently, "to successfully assert that trial counsel should have called a witness, a petitioner must first make a sufficient factual showing substantiating the proposed witness' testimony." [46] "Sworn affidavits from the potential witnesses stating what testimony they would have provided can sustain this showing."  Id.  "'In the absence of the necessary factual showing, Petitioner's mere conclusory allegations are insufficient to warranting finding that trial counsel was ineffective for failing to call these witnesses to testify.'"[47]

---

[44] Id. (citing Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978)) Fifth Circuit decisions handed down prior to October 1, 1981, are binding precedent upon this Court.  Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).

[45]Rodriquez v. Secretary, Case No. 2:06-cv-609-FtM-36SPC, 2010 WL 1961044 * 9 (M.D. Fla. May 17, 2010)(internal quotations and citations omitted).

[46]Id. (citations omitted).

[47]Id.

Here, as previously noted, Petitioner has failed to provide any evidence to substantiate what any of these witnesses would have testified to had any been called to testify.  Supra footnote 40.   Petitioner did not attach affidavits from these witnesses to his Rule 3.850 Motion, nor are any affidavits attached to his Petition.  See Exh. XXIV.   The Court notes that there are letters written from Christopher Smith, Bonnie Grundy, Chris Moseley, Colton Moseley, all pertaining to the "Samantha" tattoo, attached to Petitioner's Reply.  Reply at 56-59.  Petitioner's own conclusory allegations as to what these witnesses would have testified about are insufficient to support a finding of ineffective assistance of counsel.

Nevertheless, with respect to the "Samantha" tattoo, the post-conviction court did not find counsel was deficient, noting that defense counsel had in fact objected to the introduction of photographs of the tattoo, but the trial court rejected counsel's argument, thereby admitting the photographs into evidence.  Additionally, in the alternative, the post-conviction court also found Petitioner suffered no prejudice because the photographs of the "Samantha" tattoo constituted a "very small" portion of the trial and merely suggested that Petitioner had a relationship with SF.

Assuming arguendo the proposed exculpatory witnesses had testified in court that Petitioner had the "Samantha" tattoo ten years prior to the incident with victim SF, the record nevertheless contains overwhelming evidence that Petitioner in fact had a sexual relationship with victim SF.  Thus, the tattoo evidence suggesting that Petitioner got a "Samantha" tattoo because of his feelings for the victim, did not

cause him any prejudice. In other words, based on the evidence presented to the jury, Petitioner cannot show that, but for counsel's alleged error, the result of the proceeding would have been any different.

With respect to the "confession letter," the post-conviction court found defense counsel was not deficient because counsel did object to introduction of the letter based on the chain of custody, but the trial court overruled the objection and found that a proper chain of custody existed. The post-conviction court further found that Petitioner suffered no prejudice because the jury heard evidence from the undercover detective, who witnessed Petitioner meet SF's mother to give her the letter, and supported SF's mother's testimony. Thus, even assuming <u>arguendo</u> that Petitioner's proposed defense witnesses testified to the contrary that they saw victim SF's mother near Petitioner's car on the morning he "found" the confession letter, Petitioner has not met his burden under <u>Strickland</u> because the record contains sufficient evidence supporting the jury's verdict. In other words, Petitioner has not shown that the result of the proceeding would have been different, but for counsel's alleged failure to call these witnesses to testify about the confession letter. Petitioner acknowledges that defense counsel was aware of these witnesses, but deemed their testimony irrelevant. <u>See</u> Petition at 31. A trial counsel's decision about what witnesses to call in support of his client's defense requires a balancing of the benefits and risks of the anticipated testimony and is generally considered a matter of trial strategy. As the Eleventh Circuit noted in <u>Spaziano v. Singletary</u>, 36

F.3d 1028, 1039 (11th Cir. 1994), cert. denied, 513 U.S. 1115 (1995), the United States Supreme Court has mandated a highly deferential review of counsel's conduct, especially where strategy is involved.[48]   Accordingly, Petitioner is denied relief on Grounds Two, Three, and Four.

**Grounds Five and Six**

The Court addresses Grounds Five and Six together because both claims pertain to trial counsel's alleged failure to introduce evidence that Petitioner asserts would have impeached victim SF's trial testimony, specifically a 911 transcript (ground five) and Petitioner's cell phone records (ground six). See Petition at 46-52. Petitioner argues that defense counsel rendered ineffective assistance by failing to introduce into evidence the transcript of a 911 call, on which victim SF states that Petitioner is "like a father" to her.  Petition at 46-47.  Petitioner also argues that the transcript of the 911 call substantiates that SF's mother lied about him sexually abusing her daughter to "get back at him" for calling the Department of Children and Families on her.  Id. at 50.

In Ground Six, Petitioner claims trial counsel rendered ineffective assistance by failing to introduce his cell phone records that show SF called Petitioner approximately 30 times on her own volition, which contradict SF's trial testimony that she felt threatened by Petitioner and feared him.  Id. at 52-53.  In Response to both grounds, Respondent refers the Court to the post-conviction court's order of denial.

---

[48]Strickland, 466 U.S. at 690; Chandler, 218 F.3d at 1314.

Response at 12.  Therein, the post-conviction court denied Petitioner relief on both

claims, finding in pertinent part:

The Defendant contends that his counsel was constitutionally ineffective for not seeking to have admitted into evidence a 911 tape which allegedly occurred on or about April 4, 2004 involving the Defendant, the minor victim, [SF], her mother, Stacy Bentley, and her mother's boyfriend, Fairless.  The Court finds that the Defendant has failed to meet his evidentiary burden of proof under Strickland.  First, these statements being made are hearsay statements.  Second, any statement from SF on the 911 tape that the Defendant "is like a father to her" was presented to the jury on various occasions (for example, the testimony of Mr. and Mrs. Pirkl, T-355, 367) so there is no prejudice, under Strickland, because the information was with the jury when it deliberated.

The record also established that, as to Count III, the minor victim, [SF], was turned over by the DCF to Penny Anders (i.e. Aunt Penny) on or about April 19, 2004.  It is from Penny Anders' custody from whom this Defendant removed this minor victim on May 30, 2004 and kept her until August 16, 2004 when Deputy David Yurchuck of Broward County Sheriff's Office located and removed [SF] at the Defendant's sister's house while observing the Defendant in the southwest corner of his sister's house concealing himself under a large blue sheet/piece of cloth.  (T, 313-318.)  Therefore, the 911 tape, even if arguably admissible under some hearsay exception, was not relevant to the issues in Count III because that crime was committed beginning on May 30, 2004 and the 911 tape referenced events occurring on April 4, 2004 when Samantha was in the custody of her mother, Stacy Bentley.  The 911 tape has nothing to do with the Defendant committing the crime described in Count III in late May, 2004.

The Defendant also argues that his counsel was constitutionally ineffective because counsel did not seek to have admitted into evidence certain telephone records that Defendant believes would have demonstrated that the victim, [SF], called the Defendant approximately 30 times ostensibly about the alleged abuse she was suffering at the hands of her family.  This issue again appears to involve Count III.  For the reasons set forth above, to the extent that any of these phone calls would have been made while the minor victim was in the custody of her mother, the Defendant is not entitled to relief under Strickland because

those events would have predated the circumstances surrounding the commission of the crime in Count III, namely, that the Defendant interfered with the custody between Samantha and her Aunt Penny. To the extent that the telephone records which, for the sake of this order, would establish that telephone calls made by Samantha to the Defendant, again, this evidence does not raise the question of reliability of the result of the trial. Admitted into evidence was a letter from the minor child, Samantha, that supported the defense to Count III, namely, that Samantha was taken away at her own instigation without enticement and without purpose to commit a criminal offense with or against her. A copy of this letter is attached. Juxatoposing these telephone records against the "confession letter of the Defendant, previously described, in which Defendant admits that in September, 2003, he began having a sexual relationship with this 14-year old child (the Defendant being 43 years of age at the time), the telephone records are not the type of evidence that raises the spectre that, but for the alleged ineffectiveness of counsel the Defendant would have been acquitted on this charge. This is further buttressed by the fact that the Defendant has taken the position that the victim, [SF], is an unreliable person who has allegedly repeatedly falsely accused other adult males of committing sexual improprieties upon her (see Page 43-46 of Defendant's memorandum of law in support of motion for post-conviction relief). As such, Defendant is, in essence, arguing that while this victim is wholly unreliable, if only the telephone records were put into evidence to establish that the victim, Samantha, was calling him repeatedly to seek his help regarding the alleged abuse (and then arguably being reliable about this limited portion of her testimony), that he would have been acquitted. The court finds the Defendant fails to meet his evidentiary burden of proof under <u>Strickland</u>, assuming the accuracy, validity and reliability of the telephone records and that the jury would have believed the evidence for the purpose asserted by the Defendant.

Lastly, whether Samantha was an abused child (apparently, per the Defendant, by her mother and her boyfriend) is not dispositive as to the lewd or lascivious charge (Count II). Again, as Defendant argued in his motion, the jury heard evidence that Samantha had allegedly lied about other adult males who supposedly had committed sexual offenses upon her (Page 43 of Defendant's memorandum). The jury therefore had that information when deliberating whether the State had met its burden of proof in this case and, by their verdict, determined, despite Samantha's failings, inconsistencies, alleged exaggerations of

prior sexual attacks, etc., that the Defendant committed an unlawful lewd or lascivious act upon her.  The Court finds that the Defendant failed to met his burden under Strickland.

Exh. XXVI at 23-25.  The appellate court per curiam affirmed the post-conviction court's order.  Exh. XXXIV.

The Court finds that the State courts' determinations that counsel's failure to introduce the transcript of the 911 call, or Petitioner's cell phone records to impeach victim SF's trial testimony, did not amount to ineffective assistance of counsel, is not contrary to, nor an unreasonable application of Strickland.   Nor did the court unreasonably determine the facts in light of the evidence presented to the court.  In summary, the post-conviction court found counsel's performance could not be deemed deficient for failing to move to introduce the 911 transcript, because the transcript constituted inadmissible hearsay; and, therefore counsel's attempts to introduce the transcript would have been futile and rejected by the court.  Counsel cannot be deemed deficient for failing to raise a meritless issue.[49]   The post-conviction court also found Petitioner suffered no prejudice because the statements on the 911 transcript pre-dated the dates on which the crimes were committed in Count 3.  To the extent the 911 transcript reflected that the victim considered the Petitioner "a father figure," or illustrated SF's inconsistent statements, other evidence was introduced showing the jury that Petitioner was like a father figure to her and illustrating SF's inconsistent statements. With regard to the cell phone records, the

---

[49]Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001).

post-conviction court found Petitioner suffered no prejudice because the records were irrelevant to the dates at issue in Count 3.  Again, the dates of the cell phone records <u>pre-dated</u> that dates on which Petitioner committed the crimes.  The Court presumes these State court factual findings are correct and Petitioner has not rebutted the findings with clear and convincing evidence.  Based on the foregoing, Petitioner is denied relief on Grounds Five and Six.

### Ground Seven

Petitioner submits that defense counsel rendered ineffective assistance by "knowingly eliciting harmful and damaging testimony from the [John and Debbie] Pirkles [sic]."  Petition at 55.  Petitioner states that defense counsel knew the Pirkl's testimony would hurt his case based on their deposition testimony, which supported the State's argument.  Specifically, Petitioner asserts that the Pirkls' testimony consisted of statements alluding to idea that Petitioner and SF had a "sexual relationship, [which] inferr[ed] credibility [to the alleged confession letter, and bolster[ed] [the] States [sic] [other] testimony [sic]."  <u>Id.</u> at 56.  Petitioner faults counsel for calling these witnesses, claiming counsel "opened the door" for the State to introduce this damaging testimony from the Pirkls.  <u>Id.</u>  Petitioner references the Pirkl's testimony on cross-examination including: that the Pirkls thought Petitioner and SF were dating; that Petitioner and SF stayed in a motel together; and, that Petitioner needed money and would sell anything so he could he run off with SF.  <u>Id.</u> at 57.  Petitioner argues that had counsel not called the Pirkls as witnesses, then the

only testimony supporting the charge that Petitioner was having a sexual relationship with the fourteen-year old victim was SF's mother's testimony.  Id. at 58.

In Response, Respondent briefly summarizes key testimony from the Pirkls that actually supported the defense, noting that the Pirkls testified that SF told the couple that Petitioner was "like a father to her."  Response at 13.  Respondent acknowledges that the damaging testimony against Petitioner was introduced during the prosecutor's cross-examination of the Pirkls.  Respondent points to the post-conviction court's order of denial finding that this ineffective assistance of counsel claim is exactly the type of hindsight second-guessing that Strickland condemns. Id.

The post-conviction court denied Petitioner relief on this claim, finding as follows:

> In this ground, the Defendant takes issue with his counsel calling John Pirkl and Pebbles Pirkl as witnesses in his case in chief.  These two witnesses testified that [SF] told them that the Defendant was like a "father to me" (T, 355, 367).  Pebbles also testified that she saw nothing inappropriate between these two (T, 365).  On cross-examination, the State elicited responses that the Pirkls had inquired whether the Defendant and Samantha were dating (T, 361, 370).
>
> The Court finds the Defendant has failed to satisfy his burden of proof under Strickland.  This claim pertaining to the Pirkls' testimony is exactly the type of hindsight second guessing that Strickland condemns.  Otherwise, any time a defendant does not like the specific questions asked by his counsel or his subjective belief as to impact of any given witness, a new trial would be required.

Exh. XXVI at 21.  The appellate court per curiam affirmed the post-conviction court's order.  Exh. XXXIV.

The Court finds that the State courts' denial of Petitioner's ineffective assistance of counsel, is not contrary to, nor an unreasonable application of Strickland.   Nor did the court unreasonably determine the facts in light of the evidence presented to the court.   As previously mentioned, defense counsel's decisions regarding calling some witnesses and not others is "the epitome of a strategic decision."[50]   Thus, defense counsel's decision to call the Pirkls as witnesses was a matter of trial strategy and is given great deference by this Court. Defense counsel obviously chose to call the Pirkls as witnesses because he knew from their deposition testimony that they saw nothing wrong with Petitioner's relationship with SF and that SF considered him to be a father figure, which they testified to during trial.   Defense counsel's performance cannot be deemed to have fallen below an objective standard of reasonableness for choosing to call the Pirkls as witnesses based on testimony that came out during cross-examination.   In fact, the prosecutor could have called the Pirkls as witnesses for the prosecution and elicited the same testimony without the benefit of the jury first hearing that the Pirkls saw nothing wrong with the "relationship" between Petitioner and SF.   Accordingly, Petitioner is denied relief on Ground Seven.

**Ground Eight**

Petitioner claims defense counsel rendered deficient performance by failing to object to witnesses Mr. Roberts and Ms. Bullock based on Williams rule evidence.

---

[50] Ward v. Hall, 592 F.3d 1144, 1164 (11th Cir. 2010).

Petition at 59.  Petitioner disputes the post-conviction court's factual finding that counsel objected to <u>both</u> Roberts and Bullock and claims that counsel never objected to Ms. Bullock.  <u>Id.</u> at 60 (emphasis added).  Petitioner acknowledges that defense counsel objected to Mr. Roberts based on relevancy and "him being an unknown last minute witness, [but] not on a <u>Williams</u> Rule, Prior Crimes Wrongs and Acts Violation."  <u>Id.</u>  Petitioner also argues that he agreed to consolidate his three criminal cases only if the trial court held a <u>Williams</u> Rule hearing and all evidence would be admitted.  <u>Id.</u>  In Response, Respondent refers to the post-conviction court's order of denial, pointing out that the record refutes Petitioner's contentions. Response at 13 (citing Exh. XXVI, p. 25-27).

In denying Petitioner's Rule 3.850 Motion, the post-conviction court ruled as follows:

> The Defendant asserts that the Court erred in admitting <u>Williams</u> Rule evidence and that his counsel was ineffective for not objecting to the same.  The State initially filed a <u>Williams</u> Rule notice under §90.404, Fla. Stat., shortly before the case was set for trial in October, 2005.  As Defendant states in his motion/memorandum of law, his counsel objected to the same because of insufficient notice.  The Court granted a  continuance thereby making the issue moot.  A copy of that order is attached.

> Defendant first argues that when the cases were consolidated for trial, a new "<u>Williams</u> Rule notice" was not filed and, therefore, his counsel was ineffective for not raising this issue.  This argument fails. Consolidation does not require that a new notice be filed as to the same issues that have been raised in the State's <u>Williams</u> Rule notice some three months earlier.  Additionally, after the case was continued off the October, 2005 docket, the State did file a <u>Williams</u> Rule notice in mid-November, 2005, a copy being attached.  Second, the evidence that the Defendant objected to, namely, the introduction of the "false

confession (Defendant's term) letter," the testimony of Mr. Roberts regarding the claim that he saw the Defendant kiss [SF] in a non-fatherly way, Ms. Bullock's testimony about a kiss between the Defendant and [SF] , and the "Samantha" tattoo have either been previously addressed in this order or, as to the admissibility/relevancy of the testimony of Roberts, defense counsel objected to the same and it was overruled (T, 188).  Those matters objected to and overruled by the Court are issues that would or should have been addressed on direct appeal and are not proper subject of a 3.850 motion.

Defendant  further alleges that the prejudice from various witnesses and the prosecutor's comments regarding the dropped charges "kidnaping and false imprisonment far outweigh the probative value and prejudiced the Defendant."  Any disagreement with the Court's ruling is a matter which should or could have been raised on direct appeal.

The Court finds the facts of the three counts that were tried were sufficiently interrelated to come in under <u>Williams</u> Rule evidence.  For example, as to Count III, interference with custody, testimony that the Defendant was actually having sexual relationships with the victim, [SF] (as set forth in Count II of the Amended Information), would be relevant to the defense that Defendant had taken Samantha for purposes of protecting her from other family members.  As to the charges in Count I, having sex with [KB], there was sufficient information that Defendant had sex with one minor child [KB] and then another minor child [SF] at the Defendant's residence that would survive <u>Williams</u> Rule, especially under the more relaxed standard of §90.404(2), Fla. Stat.  Lastly, the Defendant did not object to the consolidation of these three cases with the obvious understanding that these three cases and the respective evidence regarding each count would be tried together in front of one jury (T, 17-19).  Clearly, counsel and the client agreed to consolidate the cases based upon counsel's understanding that the <u>Williams</u> Rule evidence was being admitted.

The Court finds the Defendant has failed to meet his evidentiary burden of proof under <u>Strickland</u>.

Exh. XXVI at 25-27.  The appellate court <u>per</u> <u>curiam</u> affirmed the post-conviction

court's order.  Exh. XXXIV.

The Court finds that the State courts' denial of Petitioner's ineffective assistance of counsel, is not contrary to, nor an unreasonable application of Strickland.   Nor did the court unreasonably determine the facts in light of the evidence presented to the court.   Florida Statute §90.404 generally pertains to introduction of character evidence. See Id.   The statute provides that "similar fact evidence of other crimes, wrongs, or acts is admissible when relevant to prove a material fact in issue, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, but it is inadmissable when the evidence is relevant solely to prove bad character or propensity." § 904.404(2)(a).   The statute continues that in a criminal case involving child molestation, evidence of a defendant's commission of other crimes, wrongs, or acts of child molestation is admissible and may be considered for its bearing on any matter to which it is relevant.   § 904.404(2)(b).   The evidence discussed above was not offered to show Petitioner's character, but was introduced to prove a material fact in issue as discussed in the post-conviction court's order.   Accordingly, Petitioner is denied relief on Ground Eight.

**Ground Nine**

Petitioner argues that defense counsel was deficient and ineffective when counsel posed a question and made a statement from which that jurors could infer Petitioner's guilt during voir dire and then during closing argument.  Petition at 70-71. Petitioner refers to the questions defense counsel asked the jurors during voir dire,

specifically "[c]an anyone tell me the difference between . . . **innocent** and **not guilty**." Id. at 70.  Petitioner then references defense counsel's closing argument and submits that counsel made a reference during closing to the questions he asked the jurors during voir dire.  Id. at 71.  Petitioner argues that counsel's statements constituted a "fundamental error" because counsel "confessed" or admitted Petitioner's guilt.  Id.

In Response, Respondent argues that defense counsel never conceded Petitioner's guilty during trial and consistently argued the victim's lack of credibility and Petitioner's innocence.  Response at 13-14.  Respondent submits that defense counsel was merely arguing that it is "the State's burden to prove a defendant's guilt beyond a reasonable doubt, regardless of whether the jurors 'think' he might be guilty."  Id. at 13.

The Rule 3.850 Court denied Petitioner's claim for relief, finding as follows:

> Defendant also apparently complains of his own counsel's conduct.   In voir dire, his counsel was questioning one of the prospective jurors as to the difference between an individual being "innocent" and being "not guilty."   The juror correctly reflected that a person may not be innocent but that does not mean that he cannot be found not guilty if the State has not presented enough evidence to convince that jury (see Page 46 of Defendant's memorandum of law).

> This is not improper inquiry by his own counsel.  Defendant further complains that his counsel, in closing argument, when advising the jury to "remember the difference between innocent and not guilty" was telling the jury that the Defendant was not innocent (Page 46 of Defendant's memorandum of law).  That is simply incorrect.  It is a comment that reminds the jury that it is the State's burden of proof to establish guilt and not the Defendant's requirement to provide his

innocence. Lastly, in his memorandum, the Defendant completely misrepresents the last words of his counsel to the jury in which he states (Page 46 of his memorandum) that "my client is guilty."  What actually occurred is that the defense counsel's last words to the jury was "my client is not guilty" (T, 453).

The Court finds the Defendant has failed to meet his evidentiary burden of proof under Strickland on this ground.

Exh. XXVI at 15.  The appellate court per curiam affirmed the post-conviction court's

order.  Exh. XXXIV.

The Court finds that the State courts' denial of Petitioner's ineffective

assistance of counsel, is not contrary to, nor an unreasonable application of

Strickland.   Nor did the court unreasonably determine the facts in light of the

evidence presented to the court.  The record clearly refutes Petitioner's contentions

that defense counsel conceded Petitioner's guilt.  Instead, counsel's statements,

when taken in context during voir dire and during closing argument, emphasized that

it was the State's burden of proof to produce evidence satisfying each of the required

elements.  Accordingly, Petitioner is denied relief on Ground Nine.

**Ground Ten**

Petitioner argues that defense counsel rendered deficient performance for

failing to object or move for a mistrial based on statements the prosecutor made

during closing argument.  Petition at 72.  Specifically, Petitioner takes issue with the

prosecutor's use of the word "I" during his closing argument.  Petitioner argues  that

this use of the word "I" demonstrates that the prosecutor made personal opinions

during close argument, thereby shifting the State's burden of proof. Id. at 73.

Petitioner faults defense counsel for not preserving these issues for appellate

review. Id.

The post-conviction court denied Petitioner relief on this claim, finding as

follows:

> . . . . . Defendant contends that the [prosecutor's] comments were highly prejudicial and were based upon the prosecutor's personal beliefs. Preliminarily, issues pertaining to the alleged prosecutorial misconduct itself would be a direct appeal issue, see McCray v. State, 933 So. 2d 1226 (Fla. 2007), and would not be cognizable on a Rule 3.850 motion. Peede v. State, 748 So. 2d 253 (Fla. 1999). However, the failure to object to improper comments by the prosecutor can be brought under a Rule 3.850 motion.

> For the benefit of the reviewing court, the transcripts of the prosecutor's closing arguments, both initial and rebuttal, are attached. Contrary to Defendant's assertions, counsel did not give his personal opinion regarding either the justness of the cause or the guilt of the accused. C.f. Sempier v. State, 907 S.2d 1277 (Fla. 5th DCA 2005). The comments of the prosecutor of which the Defendant now complains do not fall within this category or, at the very least, the Court finds do not reach the level necessary under Strickland that any failure to object by defense counsel brings into question the reliability of the trial result. The prosecutor suggested to the jury that the State's witnesses testified consistently and accurately while the defense witnesses were somewhat inconsistent in that their recollections were not accurate when compared with their pretrial deposition testimony. The Defendant seems to place great significance on the prosecutor's use of the word "I." The jury was instructed by the Court that what attorneys say is not evidence (T, 412). The use of the term "I would submit" or "I submit," in the context of the argument, did not rise to the level of improper comment of personal opinion by the prosecutor that should have elicited, as argued by the Defendant, an objection from defense counsel to preserve this alleged error.

> The Defendant further argues that the prosecutor is expressing his personal opinion when he states "he (referring to the Defendant)

doesn't know that consent is not a defense to this crime.  He figures if he gets them to say it was consensual and they knew about it, I will be ok." (See Page 45 of Defendant's memorandum of law.)  Contrary to Defendant's position, this is not a personal opinion of the prosecutor. It is a suggestion to the jury that the Defendant, as evidenced by a letter that was admitted into evidence at trial (which will be discussed below), believed he was not committing a crime if he was able to obtain written consent from the minor (Samantha) victim's mother to his having a sexual relationship with this 15-year old victim.  Further, as to Count III regarding interference with the child custody, the prosecutor was suggesting to the jury that a 14 to 15 year old girl would not have survived on her own for 2 1/2 - 3 months without an individual, such as Defendant, taking care of her.  That is not the prosecutor's personal opinion on evidence but simply a request that the jury use its common sense in analyzing the sequence of events as clearly there was evidence at trial that the victim left with the Defendant from her Aunt Penny's house and was thereafter found with the Defendant some 2 1/2 months later in Broward County, Florida (T, 227-232).  Defense counsel was not constitutionally ineffective for not objecting to these comments.

The Defendant argues that the comments of the prosecutor to the jury that the defense witnesses had an interest in the resolution of the case and they could take that into consideration in viewing their credibility while the State's witnesses had no separate agenda were highly prejudicial or improper.  The Court disagrees and finds that objections to these arguments, if made by defense counsel, would not have been sustained.  Defense counsel's failure to object played no factor in the jury verdict so as to render the verdict unreliable as required for relief under Strickland.

Exh. XXVI at 13-15.  The appellate court per curiam affirmed the post-conviction

court's order.  Exh. XXXIV.

The Court finds that the State courts' denial of Petitioner's ineffective

assistance of counsel, is not contrary to, nor an unreasonable application of

Strickland.  Nor did the court unreasonably determine the facts in light of the

evidence presented to the court.   The reversal of a conviction is warranted only

when improper comments by a prosecutor have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process." Darden v. Wainwright, 477 U.S. 168, 181 (1986)(citations omitted).   Here, as previously mentioned, the Court must apply a deferential standard of review because there are qualifying state court adjudications denying the merits of Petitioner's claim.   Nevertheless, even if the State court's ruling was not entitled to deference, the Court finds Petitioner's claim is without merit.   The record reveals that the prosecutor's statements were neither patently improper, nor prejudicial.  Instead, the prosecutor's arguments were based on the evidence presented, not on his personal convictions.  Additionally, the record shows that Petitioner's reference to the word "I" used by the prosecutor is misplaced and taken out of context.   Thus, counsel's failure to object to the prosecutor's statements neither constitutes deficient performance, nor did his actions prejudice Petitioner because any objection would have been meritless.   Moreover, the trial court expressly instructed the jurors that arguments made by lawyers in opening and closing statements did not constitute evidence.[51]   Therefore, Petitioner is denied relief on Ground Ten.

**Ground Eleven**

Petitioner argues that defense counsel provided ineffective assistance when he failed to object to trial judge's "initiation of a plea bargain" and subsequent

---

[51]Hammond v. Hall, 586 F.3d1289, 1334 (11th Cir. 2009); Brown v. Jones, 255 F.3d 1273, 1280 (11th Cir. 2001)(citations omitted)(stating that "jurors are presumed to follow the court's instructions."), cert. denied, 534 U.S. 1085 (2002).

vindictive sentencing.  Petition at 79.  Petitioner states the trial judge asked him if he was sure he wanted to refuse the plea bargain because if he was found guilty after trial, he would face the maximum term of imprisonment allowed.  Id.  After the jury returned a guilty verdict on two counts, Petitioner states that the trial judge sentenced him to the maximum allowed, 15 years on count II and 5 years on count III.  Id. at 80.

Respondent submits that this ground is unexhausted and procedurally defaulted because Petitioner failed to raise this claim on direct appeal.  Response at 7.  In the alternative, Respondent refers to the record and argues the record contradicts Petitioner's contentions.  Id. at 14.

The post-conviction court denied Petitioner relief on this claim as follows:

At the commencement of the trial, the Court asked the State Attorney's Office "to put your offer on the record" (T, 20-23).  The State offered the Defendant a total of 20 years in the Department of Corrections followed by 10 years of sex offender probation consecutive to the DOC sentence.  The Court confirmed with Defendant that, if convicted as charged, the maximum sentence he could receive was 35 years in the DOC.  His trial counsel advised the Court that his score sheet would reflect 14.25 years as a minimum guideline DOC sentence.  The Defendant rejected the State's offer. (T, 20-23.)

This Court presided over the entire trial.  The verdict was returned finding the Defendant not guilty as to Count I but guilty as to Counts II and III.  The jury began their deliberations at 11:21 a.m. and proceedings resumed at 1:50 p.m. because the jury had a question. (T, 476-478.)  At 2:08 p.m., the jury returned with its verdicts (T, 479-480.)  This Court then confirmed that there was no legal reason why the Defendant should not be sentenced. (T, 485.)  The Defendant, through counsel, put on mitigation evidence (T, 485), however, near the conclusion of the sentencing hearing, the Defendant personally elected not to address the Court. (T, 494).  The Court, after hearing everything

offered on behalf of the Defendant in mitigation and having heard the entire trial testimony, sentenced the Defendant to 15 years in DOC as to Count II and 5 years consecutive as to Count III. (T, 495.)  The Court indicated that it was the intent that Defendant receive the maximum sentence because it was clear to the Court what the Defendant did, fundamentally, was criminal and wrong and that the Defendant deserved the maximum punishment that the Court could impose. (T, 495.)

The last quote of this Court, on the last page of the transcript, is primarily with which the Defendant takes issue.  The Court stated as follows:

> All right.   The following standard court costs.   No probation. DNA will have to be acquired by statute.  And obviously for the benefit of the 5th DCA if there are any errors in the total sentence points on the Punishment Code Scoresheet that obviously does not effect whatsoever the sentence that I have imposed, or the view that I had about the – prior sentencing.  That's all.  We're adjourned. (T, 496.).

Contrary to the Defendants's representations, this is not a determination that the Court had prejudged the case nor is it descriptive of anything.   The Court had heard all the evidence and it was abundantly clear to the Court the heinous criminal activity of this Defendant in taking sexual advantage of a teenager, who the Defendant portrayed at trial as having various problems (i.e., abused, falsely accusing men of sexual improprieties), and then taking her away from custody of her Aunt Penny for more than 2 1/2 months, merited significant punishment.  Contrary to the Defendant's position, the Court expressed no opinion or prejudgment of the Defendant of record prior to trial nor does the above quote support the same.  Nothing occurred during the sentencing process to justify leniency or mitigation for this Defendant.   Contrary to the Defendant's position, this Court was not involved in the negotiation process nor had the Court made any offers.  Defendant's belief that the Court should somehow be bound by the State's earlier offer (now partially moot as Defendant's maximum exposure, post-verdict, was now 20 years) that was rejected by the Defendant and neither initiated or encouraged by the Court, is simply not supported in fact or law.

The Court would suggest that the issue of vindictive sentencing is a matter that could or should have been raised on direct appeal and, therefore, is arguably procedurally barred.   Case law indicates vindictive sentencing issues are not cognizable by a rule 3.850 motion when raised on direct appeal.  <u>Calzada v. State</u>, 934 So.2d 541 (Fla. 3d DCA 2006).  The Defendant's direct appeal was assigned Case No. 5D06-774.  An <u>Anders</u> brief was filed.  The <u>pro</u> <u>se</u> Defendant then filed his own brief.  The Attorney General's Office filed a notice of intent not to file an answer brief.  This Court is not cognizant of what issues were raised by the Defendant on direct appeal but, if the Defendant takes an appeal of this order, clearly the Attorney General's Office can review the Defendant's initial brief in Case No. 5D06-774 to see what he argued on direct appeal.   In any event, even if not argued on direct appeal and assuming vindictive sentencing issues are properly brought under a Rule 3.850 motion, the record clearly refutes the Defendant's position.

Exh. XXVI at 27-29.  The appellate court <u>per</u> <u>curiam</u> affirmed the post-conviction court's order.  Exh. XXXIV.

Initially the Court will address whether Ground Eleven is procedurally barred. In this case, the post-conviction court noted that it was improper for Petitioner to raise his vindictive sentencing claim in his Rule 3.850 motion because such claims must be raised on direct appeal.  Exh. XXXVI at 29 (citing <u>Calzada v. State</u>, 934 So.2d 541 (Fla. 3d DCA 2006)).  Thus, the post-conviction court found the claim procedurally barred.  In the alternative, however, the post-conviction court noted that it was not privy to Petitioner's appellate brief on direct appeal, so the post-conviction court also denied the claim on its merits.  <u>Id.</u>  "We acknowledge that 'alternative' holdings with respect to both the merits and procedural default, in certain circumstances, need not necessarily preclude enforcement of the state procedural bar, <u>see</u> <u>Coulter v. Herring</u>, 60 F.3d 1499, 1505, n. 10 (11th Cir. 1995), <u>cert.</u>

denied, 516 U.S. 1122, 116 S.Ct. 934, 133 L.Ed.2d 860 (1996)." Johnson v. Singletary, 162 F.3d 630, 643 (11th Cir. 1998).  However, the Court must determine whether the post-conviction court's order was ambiguous as to whether it was denying relief based on a procedural bar or on the merits.  Id. (citing Hardin v. Black, 845 F.2d 953, 959 (11th Cir. 1988)("In the event that the federal court cannot discern on which basis the state court relied to deny collateral relief- whether because the claims were considered foreclosed by a procedural default or because they were considered to lack merit– the federal court must address the claims on the merits.")

Here, although the post-conviction court's order of denial was based on procedural default and the merits, the Court finds the order was not ambiguous.  The post-conviction court clearly ruled that based on Florida law, Petitioner must have raised his vindictive sentencing claim on direct appeal.  The post-conviction court also directed future reviewing courts and/or the Attorney General's Office to refer to the Anders brief and any pro se appellate brief to see whether Petitioner raised the claim on direct appeal.  In this case, the record shows appellate counsel filed an Anders brief, which did not raise any vindictive sentencing claim.  See Exh. III.  The appellate court provided Petitioner an opportunity to file a pro se appellate brief, Exh. IV, but he failed to comply with the appellate court's order, so the appellate court rejected his pro se appellate brief.  Exhs. VI-VII.  Therefore, the Court finds Petitioner's vindictive sentencing claim was not properly exhausted before the State courts and is now procedurally defaulted based on Florida law.  Petitioner has not

overcome this procedural default by showing cause, prejudice, or a fundamental miscarriage of justice.   Therefore, Ground Eleven is dismissed as procedurally defaulted with respect to the vindictive sentencing part of the claim.

With regard to Petitioner's claim in Ground Eleven that defense counsel rendered ineffective assistance for failing to object to trial judge's "initiation of a plea bargain," the Court finds that the State courts' denial of Petitioner's ineffective assistance of counsel, is not contrary to, nor an unreasonable application of Strickland.   Nor did the court unreasonably determine the facts in light of the evidence presented to the court.   The Court presumes the factual findings by the State court are correct and Petitioner has not overcome the findings with clear and convincing evidence.   Even if the Court did not give the deference due to the State court, the record directly refutes Petitioner's contentions.   Accordingly, Petitioner is denied relief with respect to this portion of Ground Eleven on the merits.

**Ground Twelve**

Petitioner argues that defense counsel rendered ineffective assistance of counsel  by not making "specific" arguments in his motion for judgment of acquittal. Petition at 80.   Petitioner also argues that the evidence was insufficient to convict him and counsel rendered ineffective assistance for not moving for a new trial based on this reason.   Id. at 80, 82.   Petitioner takes issue with the post-conviction court's order denying his claim as procedurally barred because Petitioner asserts the claim

can be raised at any time and should not be barred or deemed successive. Id. at

80.

In Response, Respondent submits that Ground Twelve is unexhausted and

procedurally defaulted because Petitioner did not raise the claim on direct appeal.

Response at 14-15.  Nevertheless, turning to the merits, Respondent states that the

proper analysis of Petitioner's claim is whether any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt when viewing

the evidence in light most favorable to the prosecution.  Id. at 15.

In denying Petitioner's claim for relief in his  Rule 3.850 Motion, the post-

conviction court ruled as follows:

> It is axiomatic that when defense counsel makes a motion for
> judgment of acquittal at the conclusion of the State's case in chief (and
> thereafter at the conclusion of all the evidence), a defendant admits not
> only the facts stated in the evidence adduced but also admits every
> conclusion favorable to the adverse party (i.e., the State) that a jury
> might fairly and reasonably infer from the evidence. Fitzpatrick v. State,
> 900 So.2d 495, 507 (Fla. 2005).  A court should not grant a motion for
> judgment of acquittal unless the evidence is such that no view which
> the jury may lawfully take of it favorable to the opposing party can be
> sustained under the law.  Id.  In light of the foregoing standard, the
> question is whether there was sufficient evidence presented during the
> course of the trial to support a prima facie case against this Defendant
> as to both Count II and III, which were the counts for which the
> Defendant was found guilty.  Count II was a charge of lewd or
> lascivious battery upon a child 12 year of age but less than 16 years of
> age specially involving the victim [SF].  In order to establish this charge,
> the State had the burden of proving beyond a reasonable doubt that
> [SF] was under the age of 16 years and that Jefferey Wayne Moseley
> committed an act upon [SF] by causing his penis to penetrate the
> vagina of [SF] (T, 458-459).  The law is (and as the jury was instructed)
> that neither the victim's lack of chastity nor the victim's consent is a
> defense to the crime charged and as used in regard to the offense,

lewd or lascivious meant a wicked, lustful, unchaste, licentious or sensual intent on the part of the person doing the act (T, 458-459).

The trial testimony of [SF] was that her date of birth is December 4, 1988. (T, 207.)  The Amended Information alleged that the lewd and lascivious battery occurred between June 18, 2003 and April 20, 2004 in Marion County, Florida.  Even using the last day of April 20, 2004, [SF] was under the age of 16 and over the age of 12.  Additionally, she testified that she had sexual intercourse with the Defendant (T, 218-220.)  Whether the Defendant believes that the testimony of this witness was not credible, clearly, it is for the jury to weigh this evidence in determining whether the State met its evidentiary burden of proof on this count.  A motion for judgment of acquittal would have been non-meritorious and counsel is not constitutionally ineffective for failing to raise a non-meritorious issue.  Johnson v. State, 921 So.2d 490, 509 (Fla. 2005); Kokal v. Dugger, 718 So.2d 138, 143 (Fla. 1998).

The jury was instructed as to Count III that to prove the crime of interfering with child custody, the State must prove the following two elements beyond a reasonable doubt, namely, that [SF] was under the age of 17 years and that the Defendant, without lawful authority, took, enticed, or aided, abetted, hired or otherwise procured in order to take or entice [SF] from the custody of her legal guardian (T, 459).  The Court further instructed that it was a defense to the crime of interfering with child custody if the Defendant reasonably believed that this action was necessary to preserve [SF] from danger to her welfare or that [SF] was taken away at her own instigation without enticement and without purpose to commit a criminal offense with or against her (T, 460).

Applying the same legal standards set forth above, there was evidence in the record that [SF] was under the age of 18 years.  (T, 207.)  There was also testimony that on or about April 19, 2004, [SF] began living with her Aunt Penny (Penny Anders)(T, 227), that the State of Florida had placed Samantha in the custody of Penny Anders in April, 2004 (T, 291) and that on or about May 30, 2004, Samantha disappeared from "Aunt Penny's" custody with the Defendant for approximately 3 months (T, 228-232) and was found in mid-August, 2004 in Broward County, Florida with this Defendant and returned back to Penny Anders (T, 288-289).  The fact the Defendant may have presented conflicting evidence regarding the circumstances surrounding Samantha's leaving her Aunt Penny is not dispositive.  The Court, on a motion for judgment of acquittal, must construe the facts

most favorably for the State and, having done so (since defense counsel did move for a judgment of acquittal on Count II which this Court denied (T, 320-327)), there was no basis to grant the motion. Therefore, counsel was not, as matter of law and fact, constitutionally ineffective as to this charge.  Count III of the Amended Information clearly alleges, in the body of the Information, that the Defendant, between May 30, 2004 and August 16, 2004, without having a court order determining his rights of custody of visitation, did unlawfully take custody of [SF], a child 17 years of age or under, and detained or concealed this child with the intent to deprive Penny Anders of her right to custody of the child.  To the extent the Defendant is separately arguing in his motion that the Court erred in not granting the Defendant's motion for judgment of acquittal as to  Count III, this claim is barred as it was or could have been raised on direct appeal.  Peede v. State, 748 So.2d 253 (Fla. 1999).

Exh. XXVI at 6-8.  The appellate court per curiam affirmed the post-conviction court's order.  Exh. XXXIV.

The Court addresses Ground Twelve on the merits because the post-conviction court's order of denial only found the claim that the trial court erred by not granting the motion for judgment of acquittal as procedurally defaulted.   Exh. XXVI at 8.   The Court finds that the State courts' denial of Petitioner's ineffective assistance of counsel claims, is not contrary to, nor an unreasonable application of Strickland.   Nor did the court unreasonably determine the facts in light of the evidence presented to the court.   Although the ineffective assistance of counsel claim is a federal constitutional claim, when "the validity of the claim that [counsel] failed to assert is clearly a question of state law, . . . we must defer to the state's construction of its own law."  Will v. Sec'y for Dep't of Corr., 278 F. App'x 902, 908 (11th Cir. 2008)(citations omitted).  Here, Petitioner does not fault counsel for not

filing a motion for judgment of acquittal.  Instead, Petitioner asserts ineffective assistance based on counsel's failure to make certain arguments in the motion.  The trial court denied defense counsel's motion for judgment of acquittal and the post-conviction court deemed counsel's performance satisfied <u>Strickland</u>'s deferential standard.  The State court found sufficient evidence had been presented by the prosecution to overcome the motion for judgment of acquittal.  Thus, any additional arguments Petitioner proposes that defense counsel should have raised in the motion would have been futile.  Moreover, the record shows defense counsel challenged the sufficiency of the evidence in his motion for judgment of acquittal and the trial court rejected the motion.  Accordingly, Petitioner is denied relief on Ground Twelve.

## V.  Conclusion

For the foregoing reasons, the Petition for Writ of Habeas Corpus (Doc. #1) is **DENIED** with prejudice.   The **Clerk of Court** is directed to **strike** Petitioner's exhibits docketed at Doc. #1-2, #1-3.  The **Clerk of the Court** is directed to enter judgment accordingly, terminate any pending motions, and close this case.

**IT IS SO ORDERED**

**DONE AND ORDERED** at Ocala, Florida, this 11th day of September 2012.

_____

UNITED STATES DISTRICT JUDGE

SA: alj
Copies: All Parties of Record